GRUGER et ux. v. PHILLIPS PETROLEUM CO.

No. 30244. Feb. 16, 1943.
Rehearing Denied April 6, 1943.

*135 P. 2d 485.*

260

B. B. Blakeney and B. B. Blakeney, Jr., both of Oklahoma City, for plaintiffs in error.

Don Emery and Rayburn L. Foster, both of Bartlesville, and E. G. DeParade and Harry D. Turner, both of Oklahoma City, for defendant in error.

HURST, J. Joseph Gruger and Marie Gruger sued Phillips Petroleum Company for an accounting because of the drainage of oil and gas from two lots in Oklahoma City owned by them. The trial court sustained a demurrer to the petition, and the plaintiffs elected to stand on their petition and refused to plead further. Thereupon the case was dismissed. Plaintiffs appeal.

The petition contained these allegations, in substance: That plaintiffs at all times therein mentioned were the owners of lots 2 and 3, block 39, Maywood addition to Oklahoma City; that on October 7, 1935, the defendant filed its application with the building superintendent of Oklahoma City for a permit to drill a well for oil and gas on said block, stating that it was the owner of community oil and gas leases covering more than 51 per cent of said block; that on October 28, 1935, the board of adjustment approved the application and granted the permit; that said block 39 is less than two and one-half acres in area, and that under Ordinance No. 3944 of Oklahoma City (the zoning ordinance) the drilling of only one well for oil and gas on the block is permitted, and that by virtue of its permit defendant is given the exclusive right to drill for oil and gas thereon; that defendant communitized its leases in block 39 with some 27 other blocks in Maywood addition and in two adjacent additions upon which it held leases; that it had developed and is producing oil from the communitized area as one lease, having drilled eleven wells thereon, and is paying to all of its lessors in such area royalty based on the proportion which the acreage of the lots owned by them bears to the entire leased area; that defendant has not drilled a well upon block 39; that the eleven wells referred to were drilled upon the communitized area by defendant so as to produce a maximum amount of oil therefrom at a minimum expense, and to avoid drilling upon each of the blocks so communitized, and with the intent and design to drain the oil and gas from all of block 39, including the lots of plaintiffs, without paying plaintiffs and other property owners in said block, who had not leased their lots to defendant, for the oil so drained from their lots; that by procuring the permit to drill and thus preventing plaintiffs and other property owners from drilling or causing a well to be drilled, defendant became "impliedly obligated to then pay royalty to them for the oil and gas taken from their properties"; that de-

fendant by reason of its said acts, has taken the property of plaintiffs without compensation therefor and that it should be required to account to plaintiffs for all the oil and gas so taken from their lots, and for all which may be taken from their lots in the future, and that the amount taken and which will be taken in the future is of the value of not over $3,000. From a plat attached to and made a part of the petition it appears that block 39 is on the western edge of the producing area, all the wells shown on the plat being east of that block.

Plaintiffs plead a portion of Ordinance No. 3944 of Oklahoma City, the zoning ordinance, which regulates the drilling of oil and gas wells in the city. The ordinance provides that such wells may be drilled only in the U-7 zone, and then only after a permit is secured from the city by one having a lease from owners of as much as 51 per cent of the area of the proposed drilling unit. It provides that no more than one well may be drilled on an unplatted tract of less than five acres or on a platted tract of less than two and one-half acres, and that unplatted tracts of less than five acres and platted tracts of less than two and one-half acres may, by the board of adjustment, be attached, in whole or in part, to adjoining tracts for drilling purposes. It outlines the procedure for obtaining drilling permits and, if the applicant does not have a lease on the entire tract constituting the drilling unit, requires notice by registered mail to be given to all known owners of property in the block or tract to be used as a drilling unit, and in the event any owner cannot be so served it provides for publication notice to such person. The ordinance authorizes the adjustment board to "determine the equities and grant a proper permit," and to "make any equitable order in relation thereto which may be proper in order that substantial justice may be done," and provides that the board upon the hearing for a drilling permit "shall examine all witnesses under oath and keep a record of its proceedings, and shall have au-

thority and shall make any requirements, regulations, or orders which may be necessary, proper, or equitable for all parties interested therein, and shall protect and safeguard the rights of all parties affected by such order," and that "any party affected by said order may appeal, as provided by law, to the district court."

Plaintiffs say that "the liability which we seek to impose upon the defendant has not been specifically declared in an adjudicated case. This is a result merely of the novel factual situation; when that situation is properly analyzed, it is apparent that ancient and well-known principles of law and equity are easily applicable to it." They argue that the petition states a cause of action on the theory of quasi contract or a trust ex maleficio; that by the conservation statutes (52 O. S. 1941 §§ 81-138), the well-spacing statute (52 O. S. 1941 § 87) and said Ordinance No. 3944, enacted under authority of the zoning statute (11 O. S. 1941 §§ 401-410), the law of capture has been abrogated; that by getting leases on 51 per cent of the area of block 39 and the permit to drill on that block, it deprived the plaintiffs of the right to drill thereon, and they became forced lessors of the defendant company; that equity will not permit a majority of the lot owners in a block to conspire with their lessee to drain the property of the minority lot owners and deprive the minority lot owners of the right to participate in the production, but will give relief under the doctrine of constructive trust or trust ex maleficio. They cite no authorities that are helpful in solving the problem presented.

Plaintiffs do not allege any contractual relationship with defendant. They do not allege facts showing fraud or conspiracy out of which a trust ex maleficio could arise. They point to no statute making it the duty of defendant to account to them because of the drainage complained of and thus rendering defendant liable to them on the theory of quasi contract. They do not allege that they offered to lease their lots to

the defendant or that the defendant refused to permit them to enter into the community arrangement along with the other lot owners in the block, or that they appeared before the board of adjustment for relief under the zoning ordinance. They do not allege the existence of an order of the adjustment board giving them the right to participate in the production of any wells drilled by the defendant. Nor do they allege facts excusing their failure to appear before the board of adjustment for relief under the zoning ordinance. They do not allege that the Corporation Commission had or exercised any jurisdiction under the well-spacing statute.

The law of capture, under which oil and gas is owned by the one lawfully reducing it to possession, still obtains in Oklahoma, except as it has been or may be regulated or restricted under laws passed in the exercise of the police power, such as the proration and spacing statutes and city zoning ordinances. Those laws do not abrogate the law of capture. They are not self-executing. They simply authorize administrative boards to issue orders that have the effect of regulating or abrogating in a measure the law of capture.

The Oklahoma City zoning ordinance has been before this court several times, and its validity has been sustained. Anderson-Kerr, Inc., v. Van Meter, 162 Okla. 176, 19 P. 2d 1068; Blevins v. Harris, 172 Okla. 90, 44 P. 2d 112. Those demanding rights under the ordinance must follow the procedure therein outlined and secure their rights under orders that may be issued by the city adjustment board, or the courts on appeal, if they cannot make satisfactory contractual arrangements with the producer. Phillips Petroleum Co. v. Kite, 167 Okla. 359, 29 P. 2d. 942. The rights so secured flow from orders properly made by the adjustment board in the exercise of its original jurisdiction under the broad powers given it by the ordinance or under orders made by the district court on appeal from the board. The jurisdiction of the district court under said ordinance is appellate only.

Assuming that there might be circumstances excusing a lot owner from appearing before the adjustment board for relief under the ordinance, which would authorize the district court, in the exercise of its equitable powers, to grant relief to such owner, which question is not now before us and we do not decide, we think it is clear that no such state of facts is stated in the petition.

We conclude that the petition does not contain a statement of facts making it the duty of the defendant to account to it for oil and gas alleged to have been drained from under their lots, and the demurrer was properly sustained.

Affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, WELCH, and DAVISON, JJ., concur. ARNOLD, J., concurs in conclusion. BAYLESS, J., dissents.